In the Matter of the NEW YORK CENTRAL RAILROAD COMPANY, Appellant, against EUGENE J. DONNELLY et al., as Assessors of the City of Buffalo, Respondents.

Fourth Department, May 13, 1959.

*Vaughan, Brown, Kelly, Turner & Symons (Mark N. Turner, Raymond C. Vaughan* and *Thomas E. Hagmeir* of counsel), for appellant.

*Anthony Manguso, Corporation Counsel (Abraham I. Okun* of counsel), for respondents.

HALPERN, J. This case involves the construction of the provisions of section 292 of the Tax Law, as amended by chapter 551 of the Laws of 1949. This amendment was part of a general revision of article 13 of the Tax Law, which was adopted upon the recommendation of the Judicial Council. We are concerned only with the provisions of subdivision 1 of section 292 governing proceedings to review tax assessments in up-State New York. So far as here relevant, the subdivision reads: " the respondent shall serve a verified answer upon the petitioner, at least five days prior to the return day, unless the time to serve such answer is extended by the parties or by the court for good cause shown. However, if the respondent fails to

serve such answer within the required time, all allegations of the petition shall be deemed denied."

The question presented is whether the petitioner may compel the assessors to serve an answer if the assessors fail to serve one within the required time.

The petitioner instituted this proceeding to review the assessments upon its property in the City of Buffalo for the year 1958 by serving a verified petition and a notice of motion returnable on April 28, 1958. The Board of Assessors failed to serve a verified answer prior to, or on, the return day and has not served one since. An extension of the time to answer has not been given by the petitioner nor has one been granted by the court.

The petitioner moved for an order compelling the respondents to serve a verified answer. In opposition to the motion, the respondents maintained that, in view of the statutory provision that upon their failure to serve an answer " all allegations of the petition shall be deemed denied ", they need not serve an answer, if they do not wish to do so. The Special Term agreed with this contention and accordingly denied the motion.

We reach a contrary conclusion. The statute is mandatory in its terms. It provides that the respondent " shall " serve a verified answer. The statute prescribes the time within which the answer must be served and it requires the respondent to obtain a stipulation from the petitioner or an order from the court " for good cause shown " if it desires an extension of the prescribed time. It is true that the statute provides that, in the event of the respondent's failure to serve an answer within the required time, " all allegations of the petition shall be deemed denied " but this provision does not preclude the petitioner from taking further proceedings to compel the respondent to serve an answer in accordance with the preceding sentence of the statute.

The purpose of the " deemed denial " provision is fully explained in the Report of the Judicial Council (Fourteenth Annual Report of N. Y. Judicial Council, 1948, p. 201). The primary purpose of the provision was to permit the petitioner to proceed at once, on the basis of the " deemed denial ", if he wished to do so, without the necessity of going through the time-consuming process of compelling the respondent to interpose an answer or to make a return. As the Judicial Council explained: " At present, if the respondent fails to make a return, the relator must obtain an order to show cause why the respondent should not be held in contempt. An order upon such application is invariably granted with a provision that if

the return is filed by a certain date, the respondent is purged of his contempt. If the respondent still does nothing, the relator must obtain another order committing him for contempt. This procedure causes delay and is not satisfactory'' (Fourteenth Annual Report of N. Y. Judicial Council, 1948, p. 201).

The '' deemed denial'' provision was designed to remedy this situation. '' Under the recommended provision, a petitioner who is desirous of having his review determined, may proceed to do so unhindered by such delaying tactics of taxing officials'' (*op. cit.,* p. 201). If the petitioner is satisfied to proceed on the basis of the '' deemed denial'', he may ask that the case be set down for hearing at once. But if he is not satisfied and wishes to obtain a written answer, he may move to compel an answer.

The '' deemed denial'' provision was intended for the benefit of the petitioner; it enabled him to expedite the proceeding, if he was willing to forego any advantage he might obtain by insisting upon an answer and thereby eliciting admissions or narrowing the issues. It was not intended to deprive him of any right. As the Judicial Council stated in submitting its recommendation to the Legislature, the purpose of the revision of article 13 was to establish '' a direct, uncomplicated procedure which retains the essential advantages of the present practice, but eliminates the purely historical characteristics, without sacrificing any right or protection afforded either party'' (Fourteenth Annual Report of N. Y. Judicial Council, 1948, p. 50). One of the rights of the petitioner under the former practice was the right to compel a return by contempt proceedings. As the Judicial Council stated, this right was not '' sacrificed''; on the contrary, it was explicitly preserved in the new statute except that an answer was substituted for a return '' in conformity with the general plan of substituting a proceeding similar to one under Article 78 of the Civil Practice Act for the present certiorari proceeding'' (*op. cit.,* p. 200). (See, for certiorari procedure, 10 Carmody, New York Practice, § 316, p. 326.) With the substitution of an answer for a return is was no longer necessary to move to punish for contempt to compel a return; a simple motion could be made in the tax review proceeding to compel an answer, if an answer was not forthcoming in accordance with the statutory requirement.

As the Judicial Council explained: '' The respondent would be *required* to answer the petition within twenty days of its service on him. However, in the event that the respondent failed to answer, all allegations, except those of a purely formal nature, would be deemed denied, and the petitioner could pro-

ceed to place the proceeding upon the calendar *if he so wished* " (emphasis added) (*op cit.*, p. 51).

These explanatory comments make it perfectly plain that the respondents are not given the option to answer or to refrain from answering as they wish. On the contrary, the option is given to the petitioner either to proceed upon the basis of the deemed denial " if he so wishes " or to insist upon a verified answer.

If the respondents fail to answer within the time prescribed by statute or the extended time fixed by a stipulation or order, they breach their duty under the statute. The statute then steps in and interposes a " deemed denial " of the allegations of the petition so that the progress of the case will not be delayed, if the petitioner desires to proceed at once, but the statute does not by virtue of this " deemed denial " relieve the respondents of their statutory duty to serve a verified answer. The statute leaves it to the petitioner to elect whether to insist upon the performance of the statutory duty or to proceed without an answer.

When the provisions of subdivision 1 are contrasted with the provisions of subdivision 2, governing the procedure in a tax review proceeding " in a city having a population of one million or more ", the conclusion reached above is fortified. In subdivision 2, it is provided that the respondent " may " serve a verified answer. This stands in sharp contrast to the word " shall " in subdivision 1. Furthermore, there is no provision for an extension of the time to answer in subdivision 2, since there is no requirement in New York City cases that an answer be served at all. There is the same provision in subdivision 2 as there is in subdivision 1 that, if the respondent fails to serve an answer, " all allegations of the petition shall be deemed denied ". But it is expressly provided in subdivision 2 that, if the respondent desires " to raise an objection to the sufficiency of the petition or to assert an affirmative defense upon the hearing, he must serve upon the petitioner within forty days after the service of a note of issue, a notice containing a statement of the nature of such objection and/or such defense ".

The difference between the statutory scheme for up-State New York and that for New York City is self-evident. In up-State New York, there must be an answer, unless both parties are willing to allow the deemed denials to stand in lieu of an answer. If the respondents wish to plead an affirmative defense, they must do so by answer; if the petitioner wishes to obtain an answer from the respondents in the hope of thereby narrowing the issues, he may move to compel an answer. On the other

hand, in the City of New York, the city officials are given an option either to answer or not to answer as they see fit. This provision was adopted in recognition of the enormous volume of tax review proceedings in the City of New York. However, as the Judicial Council noted, "In other parts of the State, * * * the number of writs involved is not great" (Fourteenth Annual Report of N. Y. Judicial Council, 1948, p. 189). Hence in up-State New York an answer was required. It will be noted that it is further provided that, if the city officials, in a New York City case, wish to assert an affirmative defense, they may either serve an answer or, in lieu thereof, a written notice containing a statement of the nature of the defense. There is no similiar provision with respect to up-State New York, permitting the service of a notice in lieu of an answer for the purpose of setting up an affirmative defense.

While it is true that the words "shall" and "may" are not always to be read literally and may sometimes be construed as interchangeable words, it is clear from the context of the statute here under consideration that the Legislature meant to use each of the words in its literal sense. The use of the word "shall" in the first subdivision of section 292, in contradistinction to the word "may" in the second subdivision, represented a deliberate choice by the Legislature. "Where affirmative words in the provision of a statute are explicit and peremptory and used in contradistinction to permissive words in another section of the same statute, it will be deemed that it was the intention of the Legislature to make such section imperative" (McKinney's Cons. Laws of N. Y., Book 1, Statutes, § 177, p. 262; see *Matter of Talbot* v. *Board of Educ. of City of N. Y.*, 171 Misc. 974, 979–980; cf. *Rosenblum* v. *Gorman,* 21 App. Div. 618). While the permissive word "may" may sometimes be construed as the equivalent of the mandatory word "shall", "This rule does not prevail in a case where the statute itself distinguishes, as this does, between what is mandatory and what is discretionary" (*Reynolds* v. *Board of Educ.*, 33 App. Div. 88, 95–96). "If these two words ['shall' and 'may'] are contrasted with each other by their employment in different clauses or sentences in the same section or paragraph, it shows the legislative intention that each shall be taken in its primary or natural sense." (Black, Interpretation of Laws [2d ed.], § 152, pp. 535–536). "Where both mandatory and directory verbs are used in the same statute, or in the same section, paragraph, or sentence of a statute, it is a fair inference that the legislature realized the difference in meaning, and intended that the verbs used should carry with them their ordinary meanings. Especially is this true where 'shall' and 'may' are

used in close juxtaposition in a statutory provision, under circumstances that would indicate that a different treatment is intended for the predicates following them." (3 Sutherland, Statutory Construction [3d ed., 1943], § 5821, p. 116; see, also, 82 C. J. S., Statutes, § 376, p. 870.)

However, we need not rely in this case upon the construction of the words " shall " and " may " in subdivisions 1 and 2, standing alone. The intent of the Legislature to require an answer in up-State New York and not to require one in New York City is plain from the context and the whole scheme of the statute. The deliberate decision by the Legislature to establish different procedures for up-State New York and for New York City must be given effect (*Connors* v. *Boorstein,* 4 N Y 2d 172, 175; *People ex rel. Carollo* v. *Brophy,* 294 N. Y. 540, 544; *James* v. *Patten,* 6 N. Y. 9, 11–12).

What is plain enough on the face of the statute becomes even clearer when the statute is read in the light of the explanatory comments by the Judicial Council. The comments of the Judicial Council are entitled to great weight in the construction of statutes adopted upon its recommendation (McKinney's Cons. Laws of N. Y., Book 1, Statutes, § 125; Fuld, The Commission and the Courts, 40 Cornell L. Q. 646, 662–663 and cases there cited).

The amendment to section 292 had an interesting legislative history. The Judicial Council originally recommended, for the entire State, an amendment, the first paragraph of which was substantially in the form which now appears in subdivision 1 (Fourteenth Annual Report of N. Y. Judicial Council, 1948, pp. 177, 200). As has already been noted, the Judicial Council explained that, under this provision, the respondent would " be required to answer " but it went on to point out that, if the petitioner desired to have his review determined without delay, he could proceed at once upon the basis of the deemed denial (pp. 51, 201). The following year, the Judicial Council altered its recommendation in response to the request of the Corporation Counsel of the City of New York (Fifteenth Annual Report of N. Y. Judicial Council, 1949, p. 321). Instead of providing that the respondent " shall " serve an answer, the recommended statute provided that the respondent " may " serve an answer (p. 342).

Thereafter, further changes were made during the 1949 legislative session. As the Judicial Council explained in its Sixteenth Annual Report (1950): " Following conferences with members of the Bar from Albany and with the Corporation

Counsel of the City of New York", the Judicial Council again modified its recommendation. "The principal change was that instead of the uniform statewide procedure recommended in the Fifteenth Annual Report, separate procedures were provided, one for property located within the City of New York and another for property located elsewhere" (p. 19). As a result, the present section 292 emerged, with subdivision 1 prescribing the procedure in up-State and subdivision 2 prescribing the procedure in the City of New York. As has been noted, the statutory provision adopted for up-State New York reverted to the first recommendation of the Judicial Council, using the word " shall " and requiring the respondent to serve an answer, whereas the provision for the City of New York used the discretionary term " may " and prescribed the special method by which the officials of the City of New York might give notice of affirmative defenses despite their failure to answer.

In a somewhat different context, the Court of Appeals has noted the difference between the procedure provided for New York City and that provided for the rest of the State in sections 291 and 292-b of the Tax Law (*Cahen* v. *Boyland,* 1 N Y 2d 8).

In the new Real Property Tax Law to take effect on October 1, 1959, subdivision 1 of section 292 becomes section 712 and subdivision 2 becomes section 714, the latter applying to cities of more than one million population and the former applying to the rest of the State.

We need hardly add that in holding that it is the duty of the respondents to serve a verified answer, we do not pass upon the question of what may or must be contained in the answer. Nothing in this opinion is intended to retract anything which was held in the case of *Matter of New York Cent. R. R.* v. *Manzella* (7 A D 2d 173). All that we now hold is that the respondents are under a statutory duty to serve a verified answer and that the petitioner is entitled to enforce that duty by a motion in the proceeding.

The order appealed from should be reversed and the motion to compel an answer should be granted.

BASTOW, J. (dissenting). Article 13 of the Tax Law was enacted upon recommendations made by the Judicial Council (Fourteenth Annual Report of N. Y. Judicial Council, 1948, pp. 49–51, 175–208; Fifteenth Annual Report of N. Y. Judicial Council, 1949, pp. 77–80, 317–350). The latter body proposed that the former procedure, which it described as " archaic, unduly extended and unnecessarily complicated by purely formal

burdensome requirements " be abolished and replaced by " a simple, modern procedure by which such assessments could be judicially reviewed." (1948 Report, p. 49.)

It is submitted that the decision about to be made imposes upon respondents a " burdensome requirement " the necessity for which is not shown by the present record. The sole affidivit submitted by the taxpayer upon this motion recites the commencement of the proceeding and the failure of the city to answer. It is then stated " That petitioner is entitled to know definitely what all the issues in this proceeding are in order to adequately prepare for trial." No other facts are alleged.

Turning to the statute we find in subdivision 1 of section 292 of the Tax Law the provision relating to the service of an answer by respondents, other than those in the City of New York. The pertinent portion reads as follows: " the respondent *shall* serve a verified answer upon the petitioner, at least five days prior to the return day, unless the time to serve such answer is extended * * *. However, if the respondent fails to serve such answer within the required time, all allegations of the petition *shall* be deemed denied." (Emphasis supplied.)

It is a recognized rule that the word " shall " when found in a statute is not always imperative. (Cf. *Matter of State of N. Y.*, 207 N. Y. 582, 585.) " The instances are many in which courts have treated a mandatory word as merely permissive when necessary to sustain an act or accomplish the purpose which was clearly intended " (*Munro* v. *State of New York,* 223 N. Y. 208, 214). To construe the foregoing quoted statutory provision as mandatory makes the entire provision without meaning. Whether read independently or in the light of subdivision 2 relating to New York City the legislative intent is plain. The respondent is given the right to serve an answer but if there is a failure to do so " all allegations of the petition shall be deemed denied."

The difference between the methods of procedure in the City of New York and elsewhere in the State was made clear by the council. The prime purpose in abolishing the necessity of serving an answer everywhere in the State was to avoid delay by the failure of the municipalities to take such action. (Fifteenth Annual Report of N. Y. Judicial Council, 1949, p. 343.) The specific difference between New York City and other parts of the State was the provision giving the former 40 days after service of a note of issue within which to serve a motion to dismiss the petition or to assert an affirmative defense. This choice rested wholly with the respondent. This special treatment was found to be necessary because of the

large number of petitions filed annually. It appears that the City does not begin to investigate a petition unless and until the proceeding is seriously pressed for placing on the calendar.

Elsewhere in the State the respondent was given the same unilateral choice. It may serve an answer within the specified time but if it fails to do so the allegations are deemed denied. It necessarily follows that if a respondent desires to move against a petition or to assert an affirmative defense it must act within the allotted time. It is submitted that a construction of this statute to mean that the service of an answer is unnecessary only in the event that both petitioner and respondent decide that such a pleading is not required violates both the plain language of the enactment and the intent of the council and the Legislature. Moreover, in a somewhat different context it has been held that the notes of statutory revisors should be considered as explaining the object of the statute but are not controlling when the language of the enactment is clear and unambiguous (cf. *Stephens* v. *People,* 19 N. Y. 549, 563).

As heretofore pointed out, the petitioner gives no reason why respondent should be required to serve an answer except "that petitioner is entitled to know definitely what all the issues in this proceeding are in order to adequately prepare for trial." It is difficult to understand how petitioner will be in a better position to prepare for trial after receipt of an answer which simply denies the material allegations of the petition. This borders upon the frivolous when by the statutory provision all of the allegations of the petition are deemed denied. The petitioner herein does not allege any expectation that respondents may seek to dismiss the petition or to assert any affirmative defenses. In the absence thereof it is unnecessary to pass upon that question. The history of the legislation makes it plain that where respondents fail to take any action and are content, as here, to rely upon the deemed denials of the petition such is their right under the statute.

If the door is to be opened in this type of proceeding to permit petitioners for no assigned reason to compel respondents to serve answers then the first step is taken to move away from the "simple modern procedure" envisaged by the Judicial Council and plainly provided for in this respect by the Legislature.

It should be noted in conclusion that the decision of this appeal does not pass upon the question of the form or content of the answer the respondents are now compelled to serve. Under the general rule, a defendant is required to admit or controvert only the material allegations of a complaint (Civ.

Prac. Act, § 261; *Post* v. *Lyford,* 285 App. Div. 101, 104). In the present posture of the proceeding it may not be decided whether all the allegations of the petition are material ones or whether the denial of any particular allegation of the petition would be subject to being stricken as sham.

The order appealed from should be affirmed.

All concur, except KIMBALL, J. P., and BASTOW, J., who dissent and vote for affirmance in an opinion by BASTOW, J., in which KIMBALL, J. P., concurs. Present — KIMBALL, J. P., WILLIAMS, BASTOW, GOLDMAN and HALPERN, JJ.

Order reversed, with $10 costs and disbursements and motion granted, with $10 costs.