■ . TOWERS HOTEL INVESTORS CORP., Appellant, v MIRIAM D. DAVIS et al., Respondents.—In consolidated holdover proceedings, the petitioner landlord appeals (by permission), as limited by its brief, from so much of an order of the Appellate Term of the Supreme Court for the Second and Eleventh Judicial Districts, dated November 28, 1975, as (1) reversed two

judgments of the Civil Court of the City of New York, Kings County, both entered February 19, 1975, which were in favor of petitioner and against respondents Kenny and Bouck, respectively, and (2) dismissed its petitions. Order affirmed insofar as appealed from, with $50 costs and disbursements. The issue herein, one of first impression, is whether the subject hotel dwelling units, which were vacant on May 31, 1968, were covered by the Rent Stabilization Law of 1969 (see Local Laws, 1969, No. 16 of City of New York, § 1). If they were, the permanent tenants thereof, who rented their units after July 1, 1971 and before July 1, 1974, during which period the "vacancy decontrol" law was in effect, are presently protected by the Emergency Tenant Protection Act of 1974 (L 1974, ch 576, § 4), and the eviction notices served upon them are ineffective. We agree with the Appellate Term that the only pertinent test for coverage of hotel dwelling units under the Rent Stabilization Law of 1969 is a monetary one—whether the "rent charged" on May 31, 1968 was $350 per month, or $88 per week, or less (see Administrative Code of City of New York, § YY51-3.1). The phrase "rent charged" is analogous to the concept of rent asked, or rental value. Had the drafters intended to exclude from coverage units which were vacant on May 31, 1968, it would have been a simple matter for them to have so stated, or to have conditioned coverage upon rent paid for occupied dwelling units. Furthermore, the statutory definition of "permanent tenant" (the law does not apply to units which were rented on a transient basis), speaks of a period of continuous residence "at any time since" May 31, 1968, "or thereafter" (Administrative Code, § YY51-5.0, subd e). It appears that the word "thereafter" is a mistake, and that it should have been "hereafter", since use of the former is redundant; in any event, the statute clearly posits a permanent tenancy beginning *on or after* May 31, 1968. The Code of the Metropolitan Hotel Industry Stabilization Association, Inc., as initially promulgated pursuant to the Rent Stabilization Law of 1969, and subject to the approval of the Housing and Development Administration (Administrative Code, §§ YY51-4.0, YY51-6.0, YY51-6.1), not only failed to exclude hotel units vacant on May 31, 1968 from coverage thereunder (§ 2, subds [f], [g]), but expressly set forth a stabilization rental for a "covered hotel dwelling unit * * * vacant on" such date (§ 20, subd [b]). Finally, the conclusion that the units are covered is in accord with the intent and spirit of the law. The authorized subject of regulation under the Rent Stabilization Law of 1969, as well as under the Rent Control and Emergency Tenant Protection Law, is a *class of housing accommodation.* Coverage, and hence, statutory protection from the apprehended evils, is, therefore, defined in terms of units, such as all apartments in post-1947 buildings, or hotel units where the rent charged does not exceed a certain sum, regardless of whether the unit is then occupied by a tenant (see Administrative Code, §§ YY51-3.0, YY51-3.1; see, also, e.g., L 1974, ch 576, § 3). Occupancy of a hotel unit on a day certain is a particularly fortuitous circumstance so that, at the least, one would expect there would be an explicit exemption from coverage if such were the intent. That such was not the intent is demonstrable from the evils sought to be remedied—oppressively high rents and a severe shortage of dwelling units—by the regulation of rents and evictions (see Administrative Code, § YY51-1.0). The last thing the drafters would have wanted would be to shrink the availability of housing at reasonable rentals still further by exempting from control a then unknown number of vacant units. Against this background, it is clear that the Appellate Term was justified in rejecting the opinion of the Housing and Development Administrator that hotel units vacant on May 31, 1968 were not covered by the Rent Stabilization Law of 1969. That opinion

was contained in an explanatory memorandum approving, *inter alia,* an amendment to the Code of the Metropolitan Hotel Industry Stabilization Association, Inc., which deleted the reference to "covered hotel dwelling unit[s] vacant on" such date from the stabilized rent section of the code (§ 20, subd [b]). The amendment postdates the enactment of the law by two years; the opinion consists of a mere one-sentence assertion, unaccompanied by any supporting statutory references, case law or reasoning. Indeed, no such supporting matter exists. Cohalan, Acting P. J., Margett, Damiani and Titone, JJ., concur; Shapiro, J., dissents and votes to reverse the order of the Appellate Term insofar as it is appealed from, and reinstate the judgments of the Civil Court which were in favor of petitioner and against respondents Kenny. and Bouck, with the following memorandum: I dissent upon the opinion of Judge Goldman at the Civil Court. In addition, I would point out that the words "rent charged" cannot logically be equated with the words "rent asked" or "rental value", as is done in the majority memorandum. It seems obvious to me that, since the parties have stipulated in the agreed statement of facts that the units in question were vacant—and that therefore no rent was being paid for them—there was, at that time, no rent being charged. The Administrative Code does not refer to "rental value", but to "rent charged", which means, to me, the rent actually being paid at the time. Furthermore, the explanatory memorandum of Albert A. Walsh, who, at the time, was the administrator of the Housing and Development Administration, should not be lightly cast aside (see *Semple v Miller,* 38 AD2d 174); his memorandum became a part of the code, which should, therefore, be given the meaning which he ascribed to it (see *Matter of New York Cent. R. R. Co. v Donnelly,* 8 AD2d 65; McKinney's Cons Laws of NY, Book 1, Statutes, § 125, subd b). In his memorandum, the administrator said: "Also, the amendments would eliminate reference to units which were vacant on *May 31, 1968, since units vacant on such date are not covered by the act"* (emphasis supplied). [85 Misc 2d 451.]