*797 OPINION OF THE COURT
Edward H. Lehner, J.
Before me are motions for summary judgment: (i) by defendant to dismiss the complaint, and (ii) by plaintiff to grant it a declaration that it is entitled to a credit against its base rent and to dismiss the counterclaim.
Defendant is the landlord of the building located at 919 Third Avenue, New York, New York (the building), having acquired it from the bankruptcy estate of the former owner on October 30, 2000. Plaintiff is a law firm that occupies several floors, amounting to 11.47% of the building, pursuant to a lease with the former owner dated December 22, 1983, which was modified on May 1, 1993 (the first lease amendment), and on July 1, 1994 (the second lease amendment). Plaintiff commenced this action on December 16, 2002, seeking damages for breach of the lease in the amount of $684,471. In its amended complaint it withdrew the claim for money damages and in lieu seeks a declaration that it is entitled to a rent credit in that amount.
The lease included a provision for a fixed amount of annual rent, defined as “Base Rent,” which was increased in both the first and second lease amendments. The lease also included a rent escalation rider that designated a “Base Year” and provided in clause RE (11) that:
“Nothing contained in this Rent Escalation Rider is intended to reduce the annual rate of Base Rent, as the same is fixed by the lease and modified by any provision of the lease other than this Rent Escalation Rider, although credits against such Base Rent may be taken by Tenant as provided by this Rent Escalation Rider.”
Other provisions of the lease provide:
“32. The term ‘Landlord’ as used in this lease means only the owner . . . for the time being of the land and Building ... so that in the event of any sale or sales of said land and Building . . . the Landlord shall be and hereby is entirely freed and relieved of all covenants and obligations of landlord hereunder, and it shall be deemed and construed without further agreement between the parties or their successors in interest, or between the parties and the transferee, at any such sale or other conveyance or transfer . . . that the transferee ... of the Building has assumed and agreed to carry out any and all
*798 covenants and obligations of landlord hereunder.
“33. The covenants, conditions and agreements contained in this lease shall bind and inure to the benefit of Landlord and Tenant and their respective heirs, distributees, executors, administrators, successors and except as otherwise provided, their assigns . . .
“63. RENT CREDITS
“If Tenant shall be entitled to credits against rental hereunder, whether by reason of a refund to Landlord of Taxes (after receipt thereof by Landlord) or a reduction or adjustment in Operating Expenses, and if this lease shall expire or terminate before Tenant shall have deducted the full amount of such credit from rental due hereunder, Landlord shall promptly pay to Tenant the full amount of any such unrecovered credit, and this obligation of Landlord shall survive the expiration or termination of this lease.”
The first lease amendment extended the term of the lease until April 30, 2005, increased the base rent and amended the rent escalation rider to provide that the “Base Expense Year” shall be the calendar year 1994 and the base year shall be the 1993-1994 tax year. For the tax years 1994-1995 through 1999-2000 the real estate taxes were less than in the base year, and the decline was greater than the increase in operating costs during such periods. Plaintiff asserts that its proportionate share of such difference during those years is $684,471, and it seeks a declaration that it is entitled to a credit against its base rent in that amount. Defendant does not contest that mathematically the amount alleged is approximately correct (transcript at 61-62), and that the amount of alleged overcharges under the formula for the two months after defendant purchased the building is approximately $18,000 (transcript at 57-60).
On July 10, 2001, plaintiff sent an “estoppel letter” to defendant and Secore Financial Corporation in connection with financing being arranged by defendant stating that it “is not currently aware of the existence of any default on the part of any party under the Lease . . . [and it] assumes that no party currently has counterclaims, defenses or offsets under the Lease.”
Plaintiff contends that the language of the lease is clear and unambiguous and that it is entitled to a rent credit against future base rent based on the assertion that when defendant *799 purchased the building it assumed the obligations of the former owner. Defendant maintains that under the lease there can be no reduction in base rent; that as a successor owner it is not liable for any prior rental overcharges; that the claim is barred by the statute of limitations since the computational formula that allegedly caused the rental overcharges was first applied more than six years prior to commencement of the action; and that plaintiff waived any claim for a future rent credit when it executed the estoppel letter.
While, as noted in Citibank, N.A. v 666 Fifth Ave. Ltd. Partnership (2 AD3d 331 [1st Dept 2003]), the trial evidence before me in that case showed that the custom in the real estate industry was that decreases in real estate taxes would not cause a reduction in base rent, there is nothing to prevent parties from contracting for such a reduction. Here a plain reading of the above quoted clause RE (11) contemplates “credits against such Base Rent ... as provided by this Rent Escalation Rider.” Although defendant argues that such clause only contemplated credits on what it calls “true ups” (meaning modifications of operating cost escalations based on actual costs as opposed to estimated costs), there is nothing in the language of the provision to so limit the credits to which plaintiff was entitled. Thus, I agree with plaintiff that under the terms of the lease, it was entitled to a credit against base rent when the aggregate of its obligation in any year for real estate taxes and operating costs resulted in an amount lower than that set forth for the base year.
However, no credit was ever given to plaintiff for the reductions nor ever demanded by it. Rather, the papers show that the former owner took the position that under the lease there could be no lowering of the base rent based on any such reduction. On November 9, 1995, the former owner’s managing agent sent a letter to plaintiff that stated: “In accordance with the escalation clause of your lease, we render herewith our bill for additional rent due to the increase or decrease in Real Estate Taxes and Operating Expenses as follows: A) 1995/1996 Real Estate Tax Escalation . . . Limited Tax Credit (Limited to total operating escalation calculated below).” Each of the subsequent statements sent by the former owner’s managing agent for the tax years through 1999-2000 also expressly stated that the credit for the real estate tax decrease in relation to the base year was limited to the operating cost escalation.
This brings me to the defendant’s affirmative defense that this action, commenced in December 2002, is barred by the six- *800 year statute of limitations. In Goldman Copeland Assoc, v Good-stein Bros. & Co. (268 AD2d 370 [1st Dept 2000], lv dismissed 95 NY2d 825 [2000], lv dismissed 96 NY2d 796 [2001], rearg denied 96 NY2d 897 [2001]), the First Department, in concluding that the tenant’s claim for wage escalation overcharges was time-barred, stated (at 371):
“It is undisputed that the landlord gave the tenant detailed yearly porter wage escalation statements for the years in question, which were paid by the tenant without protest. Since such statements consistently used the same formula in determining the escalation, the tenant’s overcharge claim accrued upon its receipt of the first statement almost 12 years before it commenced this action. At that time it had all of the information it needed to contest the manner in which the landlord computed the escalation. The tenant’s alternative argument that the yearly increase due under the porter wage escalation clause created a new cause of action each and every year is unpersuasive in the context of a dispute involving a computational methodology that remained constant over the years for which the computation is being challenged.”
Similarly, in Matter of 100 William Co. v Aetna Ins. Co. (163 AD2d 170 [1st Dept 1990]), it was ruled (at 171):
“In addition, respondent was clearly aware of the manner of calculating the operating escalation since 1978 but did not challenge it for over 10 years. Inasmuch as it now seeks to ‘reform’ the agreement with respect to the manner of calculating the operating escalation, that claim is barred by the applicable Statute of Limitations. (CPLR 213.)”
Plaintiff’s effort to distinguish these cases lacks merit. It argues that the Goldman case involved a calculation of porter’s wage escalation charges and not, as here, the effect of real estate tax reductions. However, this is a distinction without a difference, as this case also involves a methodology of determining the amount of any credit due plaintiff. As in Goldman, it had all the information it needed to challenge the refusal of the former owner to give it a rent credit. That this defense may not have been raised in other cases where it may have been applicable does not affect its viability when the facts, as here, show an interpretation of the lease that has been consistently applied since 1995. Plaintiff also maintains that it did not receive “explicit *801 notice” of the interpretation the former owner had adopted. However, the notices to the plaintiff, which is a law firm with a specialty in real estate, clearly showed that no reduction in base rent was being granted although it was obvious that under the interpretation of the lease put forward by plaintiff (with which I have concurred) it was entitled to a credit below base rent.
Thus, since the claim asserted for a credit is untimely under the six-year statute of limitations of CPLR 213, I declare that plaintiff is not entitled to the requested credit.
In its memorandum of law dated June 17, 2004, plaintiff argues (at 21-22) that dismissal of the action on statute of limitations grounds would be “irrelevant from a practical standpoint” because it can still take a credit for the amount claimed herein against future rent. This position is premised on plaintiff’s contention presented at oral argument and in its papers that the credit provided in RE (11) did not accrue to it each year, but rather the lease granted plaintiff merely an option, which it can still exercise, to take credits against future rent. (Transcript at 31 [plaintiffs counsel states that this “is the point of the suit”].) This position is based on the language of RE (11) that “credits against such Base Rent may be taken by Tenant as provided by this Rent Escalation Rider” (emphasis supplied). While at page 26 of the aforesaid memorandum of law, plaintiff states that its “overpayment of rent and failure to take full rent credit was the result of a simple mistake, not an intentional act,” it, in essence, by making this “option” argument, is seeking to excuse such mistake. The claim of an option is not a commercially reasonable or realistic interpretation of the clause. Tenants do not negotiate to take credits in the future for rent reductions presently available. This is not a situation where the word “may” should be read literally. (E.g., Matter of New York Cent. R.R. Co. v Donnelly, 8 AD2d 65, 69 [4th Dept 1959].)
Further, section C (2) of the escalation rider provides that differences in escalation rent are to be handled by increases or decreases “commencing with the then current monthly rent installment, and continuing monthly thereafter until a different comparative statement is sent to Tenant.” Thus, plaintiff’s claim for a credit accrued upon delivery of a statement showing a change. To sustain plaintiff’s position would mean that plaintiff could indefinitely extend the accrual date of the claim for statute of limitations purposes.
“The Statute of Limitations was enacted to afford *802 protection to defendants against defending stale claims after a reasonable period of time had elapsed during which a person of ordinary diligence would bring an action. The statutes embody an important policy of giving repose to human affairs . . . The primary consideration underlying such legislation is undoubtedly one of fairness to the defendant. There comes a time when he ought to be secure in his reasonable expectation that the slate has been wiped clean of ancient obligations . . . .” (Flanagan v Mount Eden Gen. Hosp., 24 NY2d 427, 429 [1969] [internal quotation marks omitted].)
To permit plaintiff to unilaterally determine when to take a rent credit and thus avoid a successful defense that its claim is time-barred would be violative of the aforesaid public policy behind the limitations statutes. (See generally, Bayridge Air Rights v Blitman Constr. Corp., 80 NY2d 777 [1992]; Slayback v Alexander, 179 App Div 696 [1st Dept 1917].) In one sense the contention that the demand for a rent credit may be made at any time would create rights similar to the rights of a holder of a demand note, the statute of limitations with respect to which commences to run upon execution (Morgan Guar. Trust Co. of N.Y. v Westreich, 213 AD2d 238 [1st Dept 1995]).
Even if the rights to the asserted credits were not time-barred, plaintiff would still have no right to take credits against the rents owing to defendant. In Won’s Cards v Samsondale/ Haverstraw Equities (165 AD2d 157 [3d Dept 1991]), it was stated (at 163) that the new owner’s
“responsibility for the breach [of the plaintiffs lease prohibiting the sale of competing goods] commenced upon the assignment and continues as long as the breach continues . . . [and] although the assignment included an express assumption of obligations, it did not include [the new owner’s] assumption of any of [the former owner’s] liabilities which arose prior to the assumption.” (See also, In re Caldor, Inc.-N.Y., 217 BR 121, 135 [US Bankr Ct, SD NY 1998]; cf. Cirfico Holdings Corp. v GTE Prods. Corp., 99 AD2d 939, 940 [1st Dept 1984] [where the buyer assumed “all of the obligations and liabilities” of the seller].)
The difference between a continuing obligation of a new owner and an assumption of liabilities of the former owner is demonstrated in the case of Bank of N.Y. v Hirschfeld (37 NY2d 501 [1975]), where the Court of Appeals held that a lease *803 obligation to provide the plaintiff with 10 free parking spaces was a continuing obligation binding upon a successor landlord, but in a subsequent determination by the Appellate Division (63 AD2d 794, 795 [3d Dept 1978]) it was held that the lessor’s obligation to pay for renovations which were completed well before the building was sold “became fixed when defendants were the owners with no responsibility on the” new owners. Here plaintiff has argued, as aforesaid, that its right to take a rent credit is a continuing obligation because it has the option to decide when to demand the credit. However, since I have determined that issue contrary to the position of plaintiff and have held that the credit accrued upon delivery of a statement showing the changes in plaintiffs share of real estate taxes and operating costs, these liabilities for rent credits existed at the time of the sale of the building and thus did not become liabilities of the defendant. Conversely, absent an assignment, defendant would not be entitled to recover any unpaid rent that accrued prior to its acquisition of the building. (See, 1 Dolan, Rasch’s Landlord and Tenant — Summary Proceedings § 5:18, at 263-264 [4th ed].)
Plaintiff has cross-moved to dismiss the counterclaim for attorneys’ fees. “[I]n the absence of any pertinent contractual or statutory provision with respect to the recovery of amounts expended in the successful prosecution or defense of an action, each party is responsible for its own legal fees” (Chapel v Mitchell, 84 NY2d 345, 349 [1994]; see also, Mighty Midgets v Centennial Ins. Co., 47 NY2d 12 [1979]). The July 10, 2001 letter does not contain an agreement not to sue and plaintiffs cross motion to dismiss the counterclaim is granted.
In sum, defendant’s motion for summary judgment dismissing plaintiff’s complaint is granted and it is declared that plaintiff is not entitled to a credit against future base rent for any overcharges paid to the former owner of the building by reason of it having failed to timely take the credits to which it was entitled as alleged herein. Plaintiffs cross motion for summary judgment dismissing defendant’s counterclaim is also granted.