■ CIRFICO HOLDINGS CORPORATION, Appellant, v GTE PRODUCTS CORPORATION et al., Respondents. — Appeal from the order of the Supreme Court, New York County (Bradley, J.), entered December 23, 1982, which denied plaintiff's motion for summary judgment and granted defendants' motion for summary judgment, is dismissed as superseded by the appeal from the order, entered April 20, 1983, without costs. ¶ Order, Supreme Court, New York County (Bradley, J.), entered April 20, 1983, denying plaintiff's motion for reargument, renewal, or both, modified, on the law, the branch of the motion for renewal is granted, and upon renewal, the motion and cross motion are denied, with costs, and the order otherwise affirmed. ¶ On September 20, 1979, Circle F Industries, Inc., entered into a purchase and sale agreement (the agreement) with GTE Products Corporation. Under the agreement, Circle F Industries, Inc., sold its aluminum wiring business to GTE Products Corporation for $11,000,000. Thereupon, Circle F Industries, Inc., was reconstituted and became known as Cirfico Holdings Corporation (Cirfico). On December 14, 1979, GTE Products Corporation assigned to GTE Sylvania Wiring Devices Incorporated (GTE) its obligations and liabilities under the agreement. ¶ Prior to the execution of the agreement in 1979, the United States Consumer Product Safety Board (CPSB) brought a proceeding in the Federal District Court for the District of Columbia against Cirfico and other manufacturers of old technology aluminum wiring. This proceeding was eventually dismissed in January of 1982 because the CPSB lacked standing. In February of 1982, certain New Jersey homeowners brought a class action (the *Sharon* action) against Cirfico and other manufacturers based upon purported defects in old technology aluminum wiring. ¶ Cirfico requested GTE to defend the *Sharon*

action and to indemnify it for any damages awarded in that action. Upon GTE's refusal to do so, Cirfico brought this proceeding for declaratory judgment. The parties' dispute centers upon the following portions of the agreement: "2. Liabilities: (a) Buyer shall assume at the Closing hereunder all of the obligations and liabilities of Seller, except for the following obligations and liabilities, which are specifically disclaimed by Buyer * * * (iv) Liabilities arising out of any proceedings, pending as of the date of Closing or initiated subsequent thereto, brought by the Consumer Product Safety Commission or any successor thereto relating to aluminum wire and/or electrical wiring devices (or any third party actions arising out of such proceedings other than actions described in Clause (ii) of Paragraph 9(b) hereof) and arising out of events which occurred prior to the Closing Date * * * 9. Indemnification * * * (b) By Buyer: On condition that Seller gives Buyer notice in writing thereof, and the opportunity to defend the same, Buyer will indemnify and hold harmless and, at its expense, defend Seller, its successors and assigns, against and hereby guarantees to Seller, its successors and assigns, payment of any costs, expenses (including attorneys' fees), damages, losses or deficiencies resulting from any of the following: (i) Claims alleging any obligation or liability of Seller assumed by Buyer pursuant to this Agreement. (ii) Claims asserted after the Closing and alleging personal injuries or property damages, which injuries or damages are alleged to have arisen prior to Closing or to have arisen after Closing and to have been caused by or to have arisen out of the ownership, possession or use of products sold or otherwise distributed by Seller, the Subsidiary or Buyer, to the extent not covered by Seller's insurance." ¶ Upon Cirfico's original motion for summary judgment, it maintained that the agreement was unambiguous. Cirfico relied primarily upon memoranda of law to support its claim for summary judgment under paragraph 9 of the agreement. ¶ In support of its cross motion for summary judgment, GTE submitted an affidavit from Rolfe D. Trevisan, general counsel for the GTE Products Corporation. Trevisan supplied parol evidence as to the meaning of paragraphs 2(a)(iv) and 9(b)(i), (ii). Simply stated, it was Trevisan's belief that the *Sharon* action was exempt from coverage. ¶ Special Term adopted GTE's interpretation of the agreement and granted its cross motion for summary judgment. Thereupon, Cirfico moved for renewal upon the affidavit of its president, Victor I. Seidman. The latter set forth his own view of the negotiations that culminated in the execution of the agreement. Seidman concluded that GTE was required to defend and indemnify Cirfico under his reading of the agreement. Special Term denied renewal because the information in the Seidman affirmation had been available at the time the original motion and cross motion were submitted. ¶ In its memoranda of law submitted in support of the cross motion, GTE took the position that, if Special Term found the agreement to be ambiguous, summary judgment should be denied to both sides. In light of this request by GTE, Cirfico's first counsel apparently decided not to submit an affidavit from Seidman on its original motion. After Special Term considered the affidavit of Trevisan in rendering its original determination, it became apparent that Cirfico should have submitted the Seidman affidavit in support of its original motion. Nonetheless, upon the motion to renew, Cirfico did present a valid excuse for its failure to come forward with all existing evidence on the first motion. (Cf. *Foley v Roche,* 68 AD2d 558, 568.) Specifically, it did not believe that summary judgment would be granted if any ambiguity were found in the agreement. Therefore, renewal should have been granted. ¶ With regard to the merits of this case, it should be stressed that Trevisan stated in his own affidavit that a letter of intent and an initial draft contained language broader in scope than that found in paragraph 2(a)(iv) of the agreement. The language in the letter of intent and the initial draft did

make it quite clear that any litigation or third-party action relating to the old technology aluminum wiring would not be covered by the buyer's indemnification provision. However, the language found in paragraph 2(a)(iv) merely bars indemnification for third-party actions arising from the CPSB proceeding. ¶ It is not evident from the language employed in paragraph 2(a)(iv) whether the parties intended to exempt GTE from responsibility for proceedings, such as the *Sharon* action, which started independently from the CPSB proceeding. The agreement is ambiguous as to the meaning of "third party actions" in paragraph 2(a)(iv). Likewise, a related issue is presented as to the connotation of the term "property damages" in paragraph 9(b)(ii). It is not clear whether this term would cover a diminution in property value due to defective aluminum wiring. The affidavits submitted by Trevisan and Seidman merely create an issue of fact as to the intent of the parties in employing the language discussed above. (*Mallad Constr. Corp. v County Fed. Sav. & Loan Assn.,* 32 NY2d 285, 291.) Upon this state of the record, summary judgment should have been denied to both parties. Concur — Murphy, P. J., Sandler, Fein, Milonas and Kassal, JJ.